United States District Court
Southern District of Texas

**ENTERED**

June 24, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RODOLFO DIAZ, On Behalf of Himself and Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. H-15-1282 |
| APPLIED MACHINERY CORP., NABORS CORPORATE SERVICES, INC., and NABORS INDUSTRIES, INC., | § § § § § | |
| Defendants. | § § | |

| | | |
|---|---|---|
| ABEL ORTEGA, et al., on Behalf of Themselves and All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. H-15-2674 |
| APPLIED MACHINERY CORP., NABORS CORPORATE SERVICES, INC., and NABORS INDUSTRIES, INC., | § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Rodolfo Diaz, and 34 other individuals, on behalf of themselves and all others similarly situated, bring this action against defendants, Applied Machinery Corporation ("AMC"), Nabors Corporate Services, Inc., and Nabors Industries, Inc. (collectively, "Nabors"), to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 216(b).  Pending before the court is Plaintiffs' Partially Opposed Motion for Class Certification & Expedited Discovery (Docket Entry No. 49).  After considering plaintiffs' motion, Defendants Nabors Corporate Services, Inc., and Nabors Industries, Inc.'s Response in Opposition to Plaintiffs' Partially Opposed Motion for Class Certification & Expedited Discovery (Docket Entry No. 59), Plaintiff's Reply in Support of Plaintiffs' Partially Opposed Motion for Class Certification & Expedited Discovery (Docket Entry No. 61), and the applicable law, the court concludes that the pending motion should be granted as to all current and former "rig welders" who were jointly employed by Applied Machinery Corporation and by Nabors Corporate Services, Inc., and/or by Nabors Industries, Inc. at Applied Machinery Corporation's Conroe, Texas location within the three-year period immediately preceding entry of this Memorandum Opinion and Order.

## I.  Factual Allegations and Procedural Background

### A.  Factual Allegations

Plaintiffs allege that in June 2013, Nabors hired AMC to help build drilling rigs for its fleet.[1]  Plaintiffs allege that during the relevant statutory period the defendants hired them and others to work as welders, that they and other welders typically worked in excess of forty (40) hours a week, but were not paid overtime

---

[1]Plaintiffs' Consolidated Complaint, Docket Entry No. 28, p. 6 ¶ 15.

wages.[2]  Plaintiffs allege that instead of paying overtime wages,

defendants paid them and other welders at their normal day or

hourly-rates.[3]  Plaintiffs allege that

> [a]ll rig welders employed by AMC and Nabors are
> similarly situated to [them] because they (1) have
> similar job duties; (2) regularly work in excess of forty
> hours per week; (3) are not paid overtime for the hours
> they work in excess of forty per week as required by 29
> U.S.C. § 207(a)(1) and (4) are entitled to recover their
> unpaid overtime wages, liquidated damages and attorneys'
> fees and costs from AMC and Nabors pursuant to 29 U.S.C.
> § 216(b).[4]

**B.   Procedural Background**

On May 13, 2015, plaintiff, Rodolfo Diaz, filed this action

against AMC alleging willful violation of the FLSA.[5]  On September 14,

2015, Abel Ortega and 33 other plaintiffs filed suit against AMC in

a separate action, i.e., Civil Action No. 4:15-cv-2674, also alleging

violations of the FLSA.[6]   On October 20, 2015, AMC answered the

original complaint filed in this action.[7]  On November 20, 2015, the

---

[2]Id. at 6 ¶ 16 and 8 ¶ 31.

[3]Id. at 8 ¶¶ 30, 33 and 9 ¶ 34.

[4]Id. at 9 ¶ 39.

[5]Plaintiff's Original Complaint, Docket Entry No. 1.

[6]Original   Complaint   and   Motion   for   Collective
Action/Certification, Docket Entry No. 1 in Civil Action No. 4:15-
cv-2674.

[7]Applied Machinery Corporation's Original Answer, Docket Entry
No. 20.

two cases were consolidated,[8] and on January 8, 2016, Plaintiffs'
Consolidated Complaint was filed joining Nabors Corporate Services,
Inc., and Nabors Industries, Inc. as defendants.[9]   On February 9,
2016,   the   Nabors   defendants   answered   plaintiffs'   consolidated
complaint.[10]   On April 22, 2016, the plaintiffs and AMC stipulated to
conditional class certification and notice.[11]   On May 5, 2016, the
parties filed a Joint Motion to Withdraw Plaintiffs' Stipulation re:
Conditional Certification and Notice.[12]   The next day the court held
a hearing at which the parties' joint motion to withdraw conditional
certification and notice was granted, and plaintiffs were directed to
file a motion for conditional class certification within ten (10)
days.[13]   On May 16, 2016, plaintiff filed the pending motion for class
certification   and   expedited   discovery   seeking   to   certify   the
following class:   "All current and former 'rig welders' who worked

[8]Hearing Minutes and Order, Docket Entry No. 24 ("CA No. H-15-2674 consolidated into CA No. H-15-12822.   H-15-1282 will be the lead case.").

[9]Plaintiffs' Consolidated Complaint, Docket Entry No. 28.

[10]Nabors Corporate Services, Inc. and Nabors Industries, Inc.'s Answer to Plaintiffs' Consolidated Complaint, Docket Entry No. 35.

[11]Stipulation Re: Conditional Certification and Notice, Docket Entry No. 39, p. 2 ¶ 1 ("Plaintiffs and Defendant Applied Machinery Corporation agree to conditional certification and issuance of notice to all welders, fitters, blasters, and painters who provided services to Applied Machinery Corporation in the last 3 years.").

[12]Defendants'   Nabors   Corporate   Services,   Inc.,   Nabors Industries, Inc. & Applied Machinery Corporation's Joint Motion to Withdraw Plaintiffs' Stipulation RE: Conditional Certification and Notice, Docket Entry No. 46.

[13]Hearing Minutes and Order, Docket Entry No. 47.

for Applied Machinery Corporation and/or Nabors Industries, Inc., its parents, subsidiaries or affiliates during the last three years."[14] Plaintiff's motion asks the court to

> (1) conditionally certify this case [as a] collective action pursuant to 29 U.S.C. § 216(b); (2) authorize the issuance of notice to potential class members; and (3) order Defendants to produce verified contact information for all "rig welders" who worked for Applied Machinery Corporation and/or Nabors Industries, Inc., its parents, subsidiaries or affiliates during the last three years so that notice may be timely implemented.[15]

Attached thereto is a proposed "Notice to Applied Machinery and/or Nabors Industries Rig Welders."[16]

On June 6, 2016, defendant filed its response opposing plaintiff's motion for class certification.[17]   Nabors argues that plaintiffs motion for conditional class certification should be denied because plaintiffs have failed to show (1) that other aggrieved individuals exist; (2) that the putative class members are similarly situated; and (3) that other aggrieved individuals want to join this collective action.[18]   Nabors also argues that "conditional certification is inappropriate in this case as the determination of

---

[14]Plaintiff's Partially Opposed Motion for Class Certification & Expedited Discovery ("Motion for Certification"), Docket Entry No. 49, p. 3.

[15]Id. at 13.

[16]Exhibit I to Motion for Certification, Docket Entry No. 49-9.

[17]Defendants Nabors Corporate Services, Inc., and Nabors Industries, Inc.'s Response in Opposition to Plaintiffs' Partially Opposed Motion for Class Certification & Expedited Discovery ("Defendants' Response"), Docket Entry No. 59.

[18]Id. at pp. 7-13.

an employment relationship with Nabors will require a highly individualized analysis of each plaintiff's circumstances."[19] Nabors contends that "[s]ome rig welders are employed by Nabors, but many others, like the Plaintiffs, are independent contractors."[20]

On June 13, 2016, plaintiffs filed a reply in which they argue that Nabors' arguments are without merit and they urge the court to grant their Motion for Certification.[21]

## II. **Applicable Law and Standard of Review**

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours, 29 U.S.C. § 207(a), and allows employees to sue their employers for violation of its hour and wage provisions. See 29 U.S.C. §§ 215-16. An employee may sue his employer under the FLSA on "behalf of himself . . . and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Although § 216(b) neither provides for court-authorized notice nor

---

[19]Id. at 2.

[20]Id. (citing Exhibit A, Affidavit of Randy Lagrimini ("Lagrimini Affidavit"), Docket Entry No. 59-1, ¶ 4, and Declaration of Joe A. Schelebo ("Schelebo Declaration"), Docket Entry No. 59-2, ¶ 2).

[21]Plaintiffs' Reply in Support of Plaintiffs' Partially Opposed Motion for Class Certification & Expedited Discovery ("Plaintiff's Reply"), Docket Entry No. 61.

requires certification for a representative action under the FLSA, certification has been recognized as a useful case management tool for district courts to employ in appropriate cases. Hoffmann-La Roche Inc. v. Sperling, 110 S. Ct. 482, 486 (1989) ("A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.").

When a plaintiff seeks certification to bring a collective action on behalf of others and asks the court to approve a notice to potential plaintiffs, the court has discretion to approve the collective action and facilitate notice to potential plaintiffs. Sperling, 110 S. Ct. at 486-87 (ADEA action);[22] Villatoro v. Kim Son Restaurant, L.P., 286 F. Supp. 2d 807, 809 (S.D. Tex. 2003) (FLSA action). The court also has discretion to modify the proposed class definition if it is overly broad. See Baldridge v. SBC Communications, Inc., 404 F.3d 930, 931-32 (5th Cir. 2005) (recognizing the court's power to "limit the scope" of a proposed

---

[22]Sperling was an action brought under the Age Discrimination in Employment Act ("ADEA"), but it is informative here because the ADEA explicitly incorporates Section 216(b) of the FLSA to also provide for an "opt-in" class action procedure for similarly-situated employees. 110 S. Ct. at 486 ("We hold that district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) (1982 ed.), as incorporated by 29 U.S.C. § 626(b) (1982 ed.), in ADEA actions by facilitating notice to potential plaintiffs.").

class in a FLSA action). See also Heeg v. Adams Harris, Inc., 907 F. Supp. 2d 856, 861 (S.D. Tex. 2012) ("A court also 'has the power to modify an FLSA collective action definition on its own' if the 'proposed class definition does not encompass only similarly situated employees.'"). Because collective actions may reduce litigation costs for the individual plaintiffs and create judicial efficiency, courts favor collective actions when common issues of law and fact arise from the same alleged activity. Sperling, 110 S. Ct. at 486-87.

The term "similarly situated" is not defined in the FLSA. See, e.g., 29 U.S.C. § 216. The Fifth Circuit has declined to set a specific standard for courts to apply when considering whether employees are sufficiently similar to support maintenance of a representative action. See Mooney v. Aramco Services Co., 54 F.3d 1207, 1216 (5th Cir. 1995) (expressly declining to decide which of these two analyses is appropriate), overruled on other grounds by Desert Palace, Inc. v. Costa, 123 S. Ct. 2148 (2003).[23] Courts faced with this issue typically apply one of two standards, i.e., the two-step analysis described in Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987), or the "spurious class action" analysis

---

[23]Mooney was an action brought under the ADEA, but it is informative here because the ADEA explicitly incorporates Section 216(b) of the FLSA to also provide for an "opt-in" class action procedure for similarly-situated employees. See Mooney, 54 F.3d at 1212.

described in <u>Shushan v. University of Colorado</u>, 132 F.R.D. 263 (D. Colo. 1990).  <u>See</u> <u>Mooney</u>, 54 F.3d at 1213-16.

The <u>Lusardi</u> analysis proceeds in two stages: (1) a notice stage, followed by (2) a decertification stage.  <u>See</u> <u>Sandoz v. Cingular Wireless LLC</u>, 553 F.3d 913, 915-16 n. 2 (5th Cir. 2008) (citations omitted).  At the notice stage the court makes a decision, usually based solely on the pleadings and any affidavits that have been submitted, whether to certify the class conditionally and give notice to potential class members.  <u>See</u> <u>Mooney</u>, 54 F.3d at 1213-14.  The decision is made "using a fairly lenient standard" because the court often has minimal evidence at this stage of the litigation.  <u>Id.</u> at 1214.  Courts, in fact, "appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan."  <u>Id.</u> & n. 8 (quoting <u>Sperling v. Hoffman-La Roche, Inc.</u>, 118 F.R.D. 392, 407 (D.N.J. 1988)).  Thus, notice stage analysis typically results in conditional certification of a representative class.  <u>Id.</u>  After conditional certification the "putative class members are given notice and the opportunity to 'opt-in.'" <u>Id.</u>  After notice issues the action proceeds as a representative action.  <u>Id.</u>

The second stage of the <u>Lusardi</u> approach — the "decertification stage" — is typically precipitated by the defendant filing a motion to decertify after the opt-in period has concluded and discovery is largely complete.  <u>Id.</u>  "At this stage,

-9-

the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." Id.  If the court finds the claimants are no longer made up of similarly situated persons, it decertifies the class and dismisses the opt-in plaintiffs without prejudice.  If the class is still similarly situated, the court allows the collective action to proceed.  Id.

The Shushan analysis follows a procedure that is similar to the class certification procedure used under Federal Rule of Civil Procedure 23 ("Rule 23").

> Shushan espouses the view that § 16(b) of the Fair Labor Standards Act (FLSA) merely breathes new life into the so-called "spurious" class action procedure previously eliminated from [Rule 23].  Building on this foundation, the court determined that Congress did not intend to create a completely separate class action structure for the FLSA and ADEA context, but merely desired to limit the availability of Rule 23 class action relief under either Act.  In application, the court determined that Congress intended the "similarly situated" inquiry to be coextensive with Rule 23 class certification.  In other words, the court looks at "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified.  Under this methodology, the primary distinction between an . . . [FLSA] representative action and a [Rule 23] class action is that persons who do not elect to opt-in to the . . . [FLSA] representative action are not bound by its results.  In contrast, Rule 23 class members become party to the litigation through no action of their own, and are bound by its results.

Mooney, 54 F.3d at 1214.

While the Fifth Circuit has explicitly left open the question of whether the Lusardi approach, the Shushan approach, or some third approach should be used in determining whether employees are

sufficiently similar to support maintenance of a representative action, see Mooney, 54 F.3d at 1216, because Shushan applies the analysis used for class actions brought under Rule 23, and because the Fifth Circuit has described Rule 23's "opt out" procedure as fundamentally and irreconcilably different from § 216(b)'s "opt in" procedure, see LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288 (5th Cir. 1975) (per curiam), most courts in this district follow the Lusardi approach. See Sandoz, 553 F.3d at 915 n. 2. See also Tolentino v. C & J Spec-Rent Services Inc., 716 F. Supp. 2d 642, 646 (S.D. Tex. 2010) (collecting cases).   This court, therefore, will also follow the Lusardi approach.

At this initial state of the Lusardi approach, a plaintiff need only make a minimum showing to persuade the court to issue notice to potential class members. Mooney, 54 F.3d at 1214.   In the absence of Fifth Circuit guidance on the appropriate test to use at this stage of the analysis, courts are split on the appropriate elements to consider. Some courts use three elements, requiring the plaintiff to show that:  (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. See, e.g., Heeg, 907 F. Supp. 2d at 861; Tolentino, 716 F. Supp. 2d at 649-53.  Other courts, however, have rejected the third element as non-statutory.   See, e.g., Dreyer v. Baker Hughes Oilfield

Operations, Inc., Civil Action No. 4:08-cv-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008).  Because the third element is not statutorily required and because requiring evidence of putative class members who are willing to join a collective action before an appropriate class has even been defined conflicts with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes, see Tony and Susan Alamo Foundation v. Secretary of Labor, 105 S. Ct. 1953, 1959 (1985), the court agrees that plaintiff need not present evidence of the third element at this stage of the litigation.

### III.  **Analysis**

#### A.   **Class Certification**

Nabors urges the court to deny the pending motion for conditional class certification because "[p]laintiffs' [m]otion fails to provide some factual basis for the existence of a class-wide policy or practice **as to Nabors** that violated the law."[24] Asserting that "[p]laintiffs are independent contractors,"[25] Nabors argues that "[p]laintiffs have only provided unsubstantiated, conclusory declarations and a handful of paystubs as evidence."[26]

---

[24]Defendants' Response, Docket Entry No. 59, p. 1.

[25]Id. at 2 (citing Exhibit A, Lagrimini Affidavit, Docket Entry No. 59-1, ¶ 4, and Exhibit B, Schelebo Declaration, Docket Entry No. 59-2, ¶ 2).

[26]Id. at 5.

1.  <u>Whether There Is a Reasonable Basis for Crediting Assertion that Other Aggrieved Individuals Exist</u>

To satisfy the first element under the <u>Lusardi</u> analysis plaintiff need only show that there is a reasonable basis for believing that other aggrieved individuals exist.  <u>Heeg</u>, 907 F. Supp. 2d at 862.  Attached to plaintiffs' motion are the declarations of four of the plaintiffs named in Plaintiffs' Consolidated Complaint (Docket Entry No. 28): Adolfo Diaz, Rodrigo Campos, Abraham Francisco Puga-Reyna, and Ricardo Colmenares.  All of these declarants state that they were employed as rig welders jointly by AMC, Nabors Corporate Services, Inc., and/or Nabors Industries, Inc., that they were paid at an hourly rate, that despite routinely working more than forty hours per week they did not receive overtime pay at one and a half times their regular hourly rates, and that based on their observations, other rig welders who worked for the defendants were paid the same way, i.e., they were paid an hourly rate, denied overtime pay, and if they learned about this lawsuit, many of them would be interested in joining.[27]  Also attached to plaintiffs' motion are copies of twelve of Diaz's pay stubs showing not only that he worked over forty

_____

[27]<u>See</u> Declaration of Rodolfo Diaz ("Diaz Declaration"), Exhibit A to Motion for Certification, Docket Entry No. 49-1; Declaration of Rodrigo Campos ("Campos Declaration"), Exhibit B to Motion for Certification, Docket Entry No. 49-2; Declaration of Abraham Francisco Puga-Reyna ("Puga-Reyna Declaration"), Exhibit C to Motion for Certification, Docket Entry No. 49-3; and Declaration of Ricardo Colmenares ("Colmenares Declaration"), Exhibit L to Motion for Certification, Docket Entry No. 49-12.

hours per week, but also that he was paid the same hourly rate for all the hours that he worked.[28]

Nabors argues that the evidence attached to plaintiffs' Motion for Certification does not provide a reasonable basis that similarly aggrieved individuals exist.[29]  Citing Shanks v. Carrizo Oil & Gas, Inc., Civil Action No. 4:12-cv-3355, 2013 WL 6564636, at *5 (S.D. Tex. December 11, 2013), and Simmons v. T-Mobile USA, Inc., Civil Action No. 4:06-cv-1820, 2007 WL 210008, *4 (S.D. Tex. Jan. 24, 2007), Nabors argues that

> declarants state that "[b]ased on my observations, the other rig welders that worked for Defendants were paid the same way I was paid (i.e., they were denied overtime pay at one and one-half times their regular rates for hours worked over forty in a workweek)."  None of the declarants describe what they observed, who they observed, or the facts that led them to the conclusion that they were paid similarly.  In short, the declarations are wholly inadequate as to providing the necessary support as to why a class should be certified **against Nabors.**  Plaintiff's Motion should be denied as Plaintiffs fail to show that there is a reasonable basis that aggrieved individuals exist.[30]

Nabors' reliance on Shanks and Simmons is misplaced because the evidence for the existence of other aggrieved individuals offered in support of the applications for conditional certification that were denied in those cases was far less than the evidence offered here.  In Shanks,  2013 WL 6564636, at *5,

---

[28]See Exhibit D to Motion for Certification, Docket Entry No. 49-4.

[29]Defendants' Response, Docket Entry No. 59, pp. 7-10.

[30]Id. at 10.

conditional certification was denied because the plaintiff, a worker in one oilfield, submitted only his own affidavit in support of a proposed class comprised of employees from oilfields throughout the country.   In Simmons, 2007 WL 210008, *3, *5, the court held that the plaintiff had produced evidence that other aggrieved individuals exist, but that the evidence was largely about retail sales representatives, not about the job category for which plaintiff was seeking conditional certification, i.e., supervisory retail sales representative.   Nevertheless, the court stated that it would "assume without deciding that Simmons has established 'a reasonable basis for crediting the assertions that aggrieved individuals exist.'"   Id. at *5.

Plaintiffs reply that the existence of other aggrieved individuals is evidenced not only by the four declarations attached to their motion but also by the fifty individuals who are either named plaintiffs or who have filed consents to join this case.[31] The fifty individuals plaintiffs reference appear to be the 35 plaintiffs named in the Consolidated Complaint filed on January 8, 2016,[32] and the 15 individuals on whose behalf consent forms have been filed.   The Clerk's Docket List shows that in September and

_____

[31]Plaintiffs' Reply, Docket Entry No. 61, p. 3.

[32]Plaintiffs' Consolidated Complaint, Docket Entry No. 28.   The 35 named plaintiffs are the individual plaintiff originally named in this action (Rodolfo Diaz), and the 34 plaintiffs originally named in Civil Action No. 4:15-cv-2674 which was dismissed at the hearing held on May 6, 2016.   See Hearing Minutes, Docket Entry No. 47.

October of 2015 consents to join this action were filed for six individuals: Joel Hernandez (Docket Entry No. 10); Arnoldo Hernandez (Docket Entry No. 11); Eleazar Hernandez, Jr. (Docket Entry No. 12); Eliazar Hernandez, Sr. (Docket Entry No. 13); Alberto Ayala, Jr. (Docket Entry No. 15); and Guadalupe Vega (Docket Entry No. 21).  The Clerk's Docket List also shows that since plaintiffs filed their Motion for Certification, consents to join this case have been filed for an additional nine individuals: Alejandro Sanchez (Docket Entry No. 51); Carlos Morales (Docket Entry No. 52); Juan Abadia (Docket Entry No. 53); Juan Najer (Docket Entry No. 54); Marin Sierra (Docket Entry No. 55); Omar Penaloza (Docket Entry No. 56); Roberto Lara (Docket Entry No. 57); Walter Hernandez (Docket Entry No. 58); and Ignacio Hernandez (Docket Entry No. 64).  By submitting the declaration of the original plaintiff, Diaz, and the declarations of three individuals who were plaintiffs in the consolidated case and are now named plaintiffs in this action, i.e., Campos, Puga-Reyna, and Colmenares, and by pointing to consents filed on behalf of an additional fifteen individuals, plaintiffs have established a reasonable basis for crediting their assertions not only that other aggrieved individuals exist, but also that other aggrieved individuals want to join this lawsuit.

2.   Whether  Other  Aggrieved  Individuals  Are  Similarly
     Situated to Plaintiff

To  satisfy  the  second  element  of  the  Lusardi  analysis
plaintiff must demonstrate a reasonable basis for believing that a
class  of  similarly  situated  persons  exists.    See  Heeg,  907
F.  Supp.  2d  at  862  (citing  Lima  v.  International  Catastrophe
Solutions,  Inc.,  493  F.  Supp.  2d  793,  798  (E.D.  La.  2007)).
"Potential class members are considered similarly situated to the
named plaintiff if they are 'similarly situated in terms of job
requirements  and  similarly  situated  in  terms  of  payment
provisions.'"    Id.  (quoting  Ryan  v.  Staff  Care,  Inc.,  497
F.  Supp.  2d  820,  825  (N.D.  Tex.  2007)  (citing  Dyback v. State of
Florida Department of Corrections, 492 F.2d 1562, 1567-68 (11th
Cir.  1991)).    "'A  court  may  deny  plaintiffs'  right  to  proceed
collectively  if  the  action  arises  from  circumstances  purely
personal to the plaintiff, and not from any generally applicable
rule, policy, or practice.'"  Id. (quoting England v. New Century
Financial Corp., 370 F. Supp. 2d 504, 507 (M.D. La. 2005)).

Nabors  argues  that  the  Motion  for  Certification  should  be
denied  because  "[p]laintiffs  have  not  identified  a  class  of
individuals that can properly be considered similarly situated."[33]
Citing affidavits of Nabors employees, Randy Lagrimini, Director of
Capital Equipment Sourcing for Nabors Corporate Services, Inc., and
Joe  Schelebo,  Operations  Superintendent  for  the  Rig  Operations

_____

[33]Defendants' Response, Docket Entry No. 22, p. 10.

-17-

Department at Nabors International, Inc., the Nabors defendants

contend that

> Plaintiffs propose an overly broad class of "[a]ll
> current and former 'rig welders' who worked for Applied
> Machinery Corporation **and/or** Nabors Industries, Inc., its
> parents, subsidiaries or affiliates during the last three
> years (emphasis added)." Plaintiffs' proposed class
> would potentially include all rig welders, regardless of
> classification as an employee or independent contractor,
> exempt status, and work location, for both Nabors and
> AMC. Nabors currently operates in 18 countries, and
> utilizes rig welders as independent contractors and
> employees in numerous locations. Nabors classifies
> workers as employees or independent contractors based on
> factors such as the nature and duration of the project or
> work, the level of supervision Nabors provides, and the
> needs of the company, among other factors. Additionally,
> rig welders classified as employees of Nabors are subject
> to different policies, procedures, and pay practices, as
> compared to independent contractors.
>
> Plaintiffs were all classified as independent contractors
> and worked at AMC's Conroe, Texas location. None of the
> Plaintiffs who have joined this suit were classified as
> employees of AMC, much less classified as employees of
> Nabors. Further, there is no evidence that Plaintiffs
> worked at any locations owned or operated by Nabors, nor
> is there evidence that any of the Plaintiffs worked on
> projects other than the Nabors/AMC project. Despite
> solely relying upon four conclusory declarations,
> Plaintiffs fail to address any of these critical
> specifics about the other current and former individuals
> whom they wish to include in a collective action or why
> the class should be broader than one limited to the AMC
> yard in question for the specific Nabors project.[34]

Lagrimini states in relevant part:

2. Nabors Industries, Inc., and Nabors Corporate
Services, Inc., and their subsidiaries and
affiliates (collectively, "Nabors") operate
approximately one hundred forty-six (146) land
drilling rigs in fourteen (14) countries and
operate thirteen (13) offshore rigs in seven (7)

---

[34]Id. at 10-11.

countries.  In total, Nabors currently operates in
eighteen (18) different countries.  Many different
types of workers are required to operate the
onshore and offshore rigs, including rig welders.

3.    Rig welders provide services in many different
      countries.    Some  rig  welders  are  employed  by
      Nabors. As employees, they would receive paychecks
      from Nabors, which would include overtime pay, and
      they  would  be  subject  to  the  policies  and
      procedures of Nabors as well as the policies and
      procedures of the specific rig and/or location in
      which they worked.

4.    Nabors also utilizes many rig welders on a contract
      basis.    Rig  welders  who  work  as  independent
      contractors are used for specific projects. Whether
      a worker is classified as an independent contractor
      or employee depends on factors such as the nature
      and duration of the project or work, the level of
      supervision Nabors provides, and the needs of the
      company, among other factors.[35]

Schelebo states in relevant part:

1.    In  the  fall  of  2013,  I  worked  as  the  Operations
      Superintendent for the Rig Operations Department at
      Nabors.  From the fall of 2013 through the summer
      of  2015,  I  was  assigned  to  work  at  Applied
      Machinery  Corporation's  ("AMC")  Conroe,  Texas
      facility.    AMC  agreed  to  provide  repair,
      refurbishment, and maintenance services for 9 of
      Nabors's rigs.  As the Operations Superintendent
      for the Rig Operations Department at Nabors, I was
      responsible  for  ensuring  that  the  rigs  were
      repaired and refurbished as needed.

2.    There  were  many  workers  at  AMC's  Conroe,  Texas
      facility who were working on Nabors's rigs.  Many
      of the workers were not employed by Nabors.  For
      example none of the rig welders were employees of
      Nabors.

3.    I did not have regular contact with many of the rig
      welders.  The rig welders I spoke to regularly were

---

[35]Lagrimini Affidavit, Exhibit A to Defendants' Response,
Docket Entry No. 59-1, ¶¶ 2-4.

Juan Hernandez, Sr. and Juan Hernandez, Jr. (collectively, the "Hernandezes"). I would provide information to the Hernandezes about the scope of the work that needed to be completed. The Hernandezes would decide how many rig welders would be needed, they would find the rig welders, and they would choose which reg welders to use. It was my understanding that the Hernandezes were not employees of Nabors or AMC. . .

4. Typically, rig welders would provide their own trucks and their own personal welding equipment and supplies. . .[36]

Nabors argues that the evidence provided by Lagrimini and Schelebo shows that "[c]onditional certification is . . . inappropriate in the case at hand [because p]laintiffs' proposed class seeks all current and former rig welders, regardless of the classification or location."[37] Nabors argues that

[p]laintiffs' overly broad class size would include rig welders employed by Nabors and others utilized by Nabors as independent contractors. The class size would also encompass the rig welders utilized by Nabors in 18 countries, working in a myriad of conditions and on a variety of different projects. Moreover, the putative class size would include "Nabors Industries, Inc., its parents, subsidiaries or affiliates."[38]

Citing <u>Tucker v. Labor Leasing, Inc.</u>, 872 F.Supp. 941, 948 (M.D. Fla. 1994), and <u>Harper v. Lovett's Buffet, Inc.</u>, 185 F.R.D. 358, 363 (M.D. Ala. 1999), Nabors argues that courts often refuse to

---

[36]Schelebo Declaration, Exhibit B to Defendants' Response, Docket Entry No. 59-2, ¶¶ 1-4.

[37]Defendants' Response, Docket Entry No. 59, p. 16.

[38]<u>Id.</u> at 18.

authorize notices to a putative class encompassing multiple locations when practices at only one location are in evidence.[39]

The evidence attached to plaintiffs' Motion for Certification shows that at least four individuals (Diaz, Campos, Puga-Reyna, and Colmenares) worked for the defendants in the same position, i.e., as rig welders, at the same location, and were all paid the same way, i.e., at an hourly rate, and were not paid overtime for worked performed in excess of forty hours per week.[40]   Evidence attached to Nabors' response including both the Schelebo Declaration and the responses to Nabors' interrogatories show that all of the plaintiffs worked at AMC's location in Conroe, Texas.[41]

Nabors does not dispute that plaintiffs and other rig welders working at AMC's Conroe, Texas, location were similarly situated in terms of job requirements, that they were all paid an hourly-rate, that they regularly worked more than forty hours a week, and that they were not paid overtime.   Instead, Nabors argues that plaintiffs' were not subject to the FLSA's overtime requirements

---

[39]Id. at 11.

[40]See Exhibits A-C and L to Motion for Certification, Diaz Declaration, Campos Declaration, Puga-Reyna Declaration, and Colmenares Declaration, Docket Entry Nos. 49-1 through 49-3, and 49-12.

[41]See Schelebo Declaration, Exhibit B to Defendants' Response, Docket Entry No. 59-2, ¶¶ 1-3; Exhibits E-H to Defendants' Response, Objections & Answers to Defendants' Nabors Corporate Services, Inc., and Nabors Industries, Inc. First Set of Interrogatories for Rodolfo Diaz, Rodrigo Campos, Abraham Puga-Reyna, and Ricardo Colmenares, Docket Entry Nos. 59-5 through 59-8, respectively.

because they were not Nabors' employees and were, instead, independent contractors.   The court is not persuaded by this argument because exemptions are merits-based defenses to FLSA claims that courts in this district typically hold to be irrelevant at this initial, notice stage of the case.   See, e.g., Dreyer, 2008 WL 5204149, at *2 (rejecting defendant's argument that the possible application of multiple FLSA exemptions counseled against conditional certification "because exemptions are merits-based defenses to an FLSA claim" that "cannot defeat conditional certification"); Foraker v. Highpoint Southwest, Services, L.P., Civil Action No. 4:06-cv-1856, 2006 WL 2585047, at *4 n. 16 (S.D. Tex. Sept. 7, 2006) (rejecting the defendant's argument that conditional certification should be denied because plaintiffs were supervisors and exempt under the executive exemption as an argument that "goes to the merits of whether the employees are exempt from overtime pay and is not a persuasive basis to deny notice").

Because Nabors admits to treating all rig welders working at the AMC location in Conroe, Texas, as exempt independent contractors, and because there is no evidence now before the court showing that the day-to-day job duties of rig welders at that location differ substantially, the court concludes that the potential class members are similarly situated in terms of both job requirements and payment provisions.   Because the evidence now before the court shows that there is a reasonable basis for crediting plaintiffs' assertion that other aggrieved individuals

-22-

exist and that other aggrieved individuals are similarly situated
to plaintiffs in terms of both job requirements and payment
provisions, the court concludes that plaintiffs have provided
sufficient evidence to satisfy the first stage of the Lusardi
analysis, and that this matter should be conditionally certified as
a collective action under 29 U.S.C. § 216(b).  The central issue
presented by the plaintiffs' Motion for Certification and Nabors'
opposition thereto is whether plaintiffs have demonstrated that a
common policy or plan extends beyond the AMC location in Conroe,
Texas to all of Nabors multiple locations in 18 different
countries.  See Rosario v. Valentine Avenue Discount Store, Co.,
Inc., 828 F. Supp. 2d 508, 516 (E.D.N.Y. 2011).

     The current record does not provide a sufficient basis to
extend certification to any locations beyond AMC's Conroe, Texas
location.  The only evidence in the record is that rig welders at
AMC's Conroe, Texas location routinely worked more than forty hours
per week without being paid overtime.  "FLSA violations at one of
a company's multiple locations generally are not, without more,
sufficient to support company-wide notice."  Rueda v. Tecon
Services, Inc., Civil Action No. 4:10-cv-4937, 2011 WL 2566072, at
*4 (S.D. Tex. June 28, 2011).  See also Harper, 185 F.R.D. at 363
(finding that the plaintiffs had failed to show that employees
working at locations other than the named plaintiffs' location were
similarly situated); Tucker, 872 F.Supp. at 948 (same).  That is
not to suggest that "geographic commonality is . . . necessary to

-23-

meet the 'similarly situated' requirement for a FLSA collective action; instead the focus is on whether the employees were impacted by a common policy." Vargas v. Richardson Trident Co., Civil Action No. 4:09-cv-1674, 2010 WL 730155, at *6 (S.D.Tex. Feb. 22, 2010) (collecting cases). If there is a reasonable basis to conclude that the same policy applies to multiple locations of a single company, certification is appropriate. See Blake v. Colonia Savings, F.A., Civil Action No. 4:04-cv-0944, 2004 WL 1925535, at *2 (S.D.Tex. Aug. 16, 2004) (approving notice to loan officers in the defendant's Dallas office and those in remote locations based on evidence that the company's policies extended to all locations). The present record, however, contains no evidence that the complained-of policies or practices at AMC's Conroe, Texas location are policies or practices that extended to any other location operated by AMC or by any Nabors entity. To the extent the plaintiffs seek collective-action certification for locations other than AMC's Conroe, Texas, location, that request will be denied.

**B.   Request for Expedited Discovery and Notice to Class Members**

Plaintiffs' proposed notice is attached as Exhibit I to their Motion for Certification.[42]  Plaintiffs request that their counsel be allowed to send the proposed notice to potential class members by first class mail, and that the court fix a postmark deadline for the return of consent forms of sixty days from the date the notices

---

[42]Docket Entry No. 49-9.

are mailed.[43]  So that the notice may be timely implemented, plaintiffs request that defendants produce verified contact information for all rig welders who worked for Applied Machinery Corporation and/or Nabors Industries, Inc., its parents, subsidiaries or affiliates during the last three years.[44]

Nabors responds that (1) they should not be compelled to provide information regarding any individual who provided services to defendants outside of the potential statutory period, (2) they should not be compelled to produce unnecessary personal information, and they need more than a mere ten days to provide the information on the putative class members, (3) ninety days to opt-in is excessive; (4) consent forms must be filed with the court; and (5) plaintiffs' proposed notice is defective in several material aspects.  If the court conditionally certifies a class, Nabors urges the court to order the parties to confer and submit a proposed agreed notice.[45]

Plaintiffs' reply that

[t]he proposed form is substantially similar to a notice agreed upon by Nabors' counsel in a case currently pending before Judge Nancy Atlas, in which the undersigned is the counsel for plaintiffs, *Hester v. Burrow Global Services, LLC*, Civil Action No. 4:15-cv-03346.  It is fair and balanced.  It is also fairly understandable to a layman.  Hence Plaintiffs' notice is proper.[46]

---

[43]Motion for Certification, Docket Entry No. 49, p. 12.

[44]*Id.* at 12-13.

[45]Defendants' Response, Docket Entry No. 59, pp. 20-23.

[46]Plaintiffs' Reply, Docket Entry No. 61, p. 7.

1.   Requests for Information for Individuals Who Provided
     Services Outside of the Potential Statutory Period

Nabors objects to plaintiffs' request for information for potential class members who provided services to defendants at any time during the last three years as too broad. Citing Quintanilla v. A & R Demolition, Inc., Civil Action No. 4:04-cv-1965, 2005 WL 2095104, *16 (S.D. Tex. August 30, 2005), Nabors argues that "[b]ased on the statute of limitations, courts have recognized that class certification is appropriately limited to workers employed by the defendant up to three years before notice is approved by the court."[47]   Nabors is correct that class certification is appropriately limited to workers employed by defendants up to three years before this court approves the notice.   Tolentino, 716 F. Supp. 2d at 654.   An FLSA cause of action "may be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."   29 U.S.C. § 255(a).   "Importantly, the 'limitations period is **not tolled** with respect to other potential plaintiffs unless and until they opt in to the case.'"   Id. (quoting Quintanilla v. A & R Demolitina, Inc., Civil Action No. 4:04-cv-1965, 2005 WL 2095104, at *16 (S.D. Tex. Aug. 30, 2005)).   "Based on the statute of limitations, courts have recognized that class certification is appropriately limited to

---

[47]Defendants' Response, Docket Entry No. 59, p. 20.

workers employed by the defendant up to three years before notice is approved by the court." Id. Thus, the notice period must commence three years prior to the court's approval of this notice.

### 2. Verified Personal Contact Information (Names and Last Known Addresses) Within 90 Days

Citing the proposed order attached to plaintiffs' Motion for Certification, Nabors objects to plaintiffs' request for personal contact information for potential class members. Nabors argues:

> Plaintiffs' Motion states that the order they are seeking would require the production of "verified contact information (i.e., names and last known addresses)." Plaintiffs' proposed order, however, requests far more invasive information than what is requested in the Motion. The proposed order requests within ten (10) days of its entry, that Defendants produce "(1) Full names; (2) Email addresses; (3) Last known mailing addresses; (4) Social Security numbers; (5) All telephone numbers; (6) Dates of employment; (7) Location(s) of employment; and (8) Nature of employment.[48]

Nabors argues that plaintiffs' requests for personal information beyond names and last known addresses should be denied due to privacy concerns and because such information is not needed to send notice to putative class members. Nabors also argues that plaintiffs' demand for the personal information of putative class members within ten (10) days is overly burdensome, and that they should have at least thirty (30) days to accomplish this task.

---

[48]Id. at 21.

Plaintiffs' requests for full names, email addresses, last known mailing addresses, telephone numbers, and dates of employment are not unduly burdensome or invasive, and are appropriate and necessary to further the broad remedial purposes of the FLSA by providing notice to both current and former employees. Other courts routinely approve such requests when, as here, they are likely to further the broad remedial purposes of the FLSA by facilitating notice, and disapprove such requests only when defendant makes a showing that such measures are not likely to facilitate notice. Here, Nabors has made no such showing.  Social security numbers, however, are very personal and private, and plaintiffs have not stated any specific reason for needing them to effect notice to the putative class.  Other courts routinely deny requests for social security numbers absent extenuating circumstances.  Accordingly, the court concludes that defendants shall provide to plaintiffs' counsel contact information for potential class members that includes full names, email addresses, last known mailing addresses, all known telephone numbers, and dates of employment, but does not include social security numbers.  See, e.g., Dyson v. Stuart Petroleum Testers, Inc., 308 F.R.D. 510, 516 (W.D. Tex. 2015) (authorizing production of contact information that included potential class members' email addresses and telephone numbers but not social security numbers); In re Wells Fargo Wage and Hour Employment Practices Litigation (No. III) ("Wells Fargo III"), 2013

-28-

WL 2180014, at *2 (S.D. Tex. May 17, 2013) (denying plaintiffs'
request for email addresses upon finding that "provision of email
addresses will likely not facilitate notice in this case"); id. at
*3 (granting plaintiffs' request for social security numbers only
as to potential plaintiffs whose notice is returned as
undeliverable).


   3.   Sixty Days to Opt In Is Reasonable

   Citing the proposed order attached to plaintiffs' Motion for
Certification, Nabors objects to plaintiffs' request for a ninety
day opt-in period.  Nabors argues:

> Plaintiffs' Motion seeks a sixty (60) day opt-in period
> for class members to join this lawsuit after notice is
> provided.  Plaintiffs' order, on the other hand, requests
> a ninety (90) [day] opt-in period.  Ninety (90) days for
> the opt-in period is extremely excessive and unnecessary.
> If this matter is conditionally certified, Defendants
> request that this Court order a sixty (60) day opt-in
> period.[49]

Since plaintiff's motion seeks a sixty-day opt-in period, and since
Nabors agrees that a sixty-day opt-in period is reasonable, the
opt-in period shall be sixty (60) days.


   4.   Written Consents Must Be Filed With the Court

   Nabors argues that plaintiff's request that consent forms
provided by the putative plaintiffs be "deemed filed as of their

_____

[49]Id. at 22.

-29-

postmark date," is unreasonable and violates the plain language of the FLSA.[50]  Asserting that plaintiffs have not cited any authority supporting this request, Nabors urges the court to "reject Plaintiffs' request to deem the written consents as filed by the postmark dates and instead recognize their filing only after such action has been taken."[51]

The FLSA provides that "[n]o employee shall be a party plaintiff to any [FLSA] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).  An action under the FLSA commences "on the date when the complaint is filed, if [the plaintiff] is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought."  29 U.S.C. § 256(a).  "[I]f such written consent was not so filed or if [the plaintiff's] name did not so appear[, the action commences] on the subsequent date on which such written consent is filed in the court in which the action was commenced."  29 U.S.C. § 256(b).  See Donovan v. University of Texas at El Paso, 643 F.2d 1201, 1208 (5th Cir. 1981) (recognizing that a plaintiff must file written consent with the court to become an FLSA party plaintiff; filing the complaint is not enough).  "In a collective

---

[50]Id. at 23.

[51]Id.

action, the limitations period is tolled for the original party plaintiffs on the date the complaint is brought, and for the later op-in plaintiffs on the date their notices of consent are filed with the court." Clark v. Centene Co. of Texas, L.P., 104 F. Supp. 2d 813, 825 (W.D. Tex. 2015)(citing 29 U.S.C. ¶ 256(a)-(b)). Plaintiffs have not cited any authority that would allow the court to deem consent forms provided by the putative plaintiffs to be filed as of their postmark date as opposed to the date on which they are actually filed with court.  Thus plaintiffs request that consent forms provided by the putative plaintiffs be "deemed filed as of their postmark date" will be denied.

(5) Defective Notice

Nabors argue that

> The notice should inform opt-ins that they may be required to respond to written questions, sit for depositions and testify in court. The notice should also inform potential opt-in plaintiffs that they may be responsible for sharing in the liability for payment of costs if Defendants prevail in the lawsuit. Additionally, the notice should also inform potential opt-ins that Plaintiffs' attorneys fees will reduce their potential recovery.  This information should be required so opt-ins can be fully informed of the consequences of their decision, as best as possible, and decide if it is worth it to join the lawsuit.[52]

Citing Behnken v. Luminant Mining Co., LLC, 997 F. Supp. 2d 511, 524 (N.D. Tex. 2014), Nabors argues that opt-ins should be

---

[52]Id.

informed that they may be required to pay costs if plaintiffs receive an unfavorable decision.[53] Neither AMC nor Nabors has asserted counterclaims, and Nabors has not provided any reason to believe that should defendants prevail, any costs assessed against plaintiffs would be more than <u>de minimus</u> with respect to each individual.  In a similar case, another court in this district held that requiring an instruction that potential plaintiffs could be liable for costs associated with the lawsuit "may have an in terrorem effect that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in any significant degree." <u>Barajas v. Acosta</u>, Civil Action No. 4:11-cv-3862, 2012 WL 1952261, at *5 (S.D. Tex. May 30, 2012) (citation omitted). Moreover, courts in this district routinely approve notice forms in FLSA actions that do not include language regarding the class members' potential liability for costs. <u>See</u> <u>e.g.</u>, <u>Wells Fargo III</u>, 2013 WL 2180014, at *8.  Because Nabors has failed to identify any reason for concern that potential plaintiffs may be required to pay costs and expenses that are more than de minimus, and because courts in this district routinely approve notices without warning potential plaintiffs about such costs and expenses, the court is not persuaded that such a warning is appropriate in this case.

---

[53]<u>Id.</u>

## IV.  Conclusions and Order

For the reasons explained in § III, above, plaintiffs' requests (1) that defendants be ordered to produce social security numbers of putative class members, and (2) that consent forms provided by the putative plaintiffs be "deemed filed as of their postmark date" are **DENIED**. Accordingly, Plaintiffs' Partially Opposed Motion for Class Certification & Expedited Discovery (Docket Entry No. 49) is **GRANTED IN PART AND DENIED IN PART**, and the court provisionally deems this action a collective action and defines the conditionally approved collective class as follows:

> All current and former rig welders who were jointly employed by Applied Machinery Corporation and by Nabors Corporate Services, Inc., and/or by Nabors Industries, Inc. at Applied Machinery Corporation's Conroe, Texas location within the three-year period immediately preceding entry of this Memorandum Opinion and Order, i.e., from June 24, 2012, to the present.

Within thirty days of the entry of this Memorandum Opinion and Order defendant shall provide plaintiffs with a list of all employees fitting the description of the conditionally certified class that includes each individual's full name, last known mailing address, email address (if known), all known telephone numbers, and dates of employment.  Plaintiffs shall have thirty days from the receipt of this information to mail the proposed notice to the potential class members.  The opt-in period shall be sixty days from the date the notice is mailed.

**SIGNED** at Houston, Texas, on this 24th day of June, 2016.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE